## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL ACTION**  22-3883 |
| **Plaintiff,** | : | |
| **v.** | : | **No.** |
| **$2,354,178.98 TRANSFERRED FROM BANK OF VALLETTA ACCOUNT NUMBER 40018307713, IN THE NAME OF WOODTREE EQUIPMENT LIMITED** | : | |
| | : | |
| **$1,958,492.41 TRANSFERRED FROM BANK OF VALLETTA ACCOUNT NUMBER 40018307739, IN THE NAME OF WOODTREE EQUIPMENT LIMITED** | : | |
| | : | |
| **$71,590.48 TRANSFERRED FROM BANK OF VALLETTA ACCOUNT NUMBER 40020189783, IN THE NAME OF WOODTREE EQUIPMENT LIMITED** | : | |
| | : | |
| **$1,963,727.63 TRANSFERRED FROM EPIQ CLASS ACTION & CLAIMS SOLUTIONS, INC., THE 5DIMES CLAIMS ADMINISTRATOR** | : | |
| **Defendants.** | : | **JURY TRIAL DEMANDED** |
| | : | |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

The plaintiff, United States of America, by and through its attorneys, Jaqueline C.

Romero, United States Attorney for the Eastern District of Pennsylvania, and Sarah L. Grieb,

Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.     This is a civil action *in rem* brought, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C) and Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, to forfeit and condemn to the use and benefit of the United States of America funds currently held in an account controlled by the U.S. Department of Homeland Security, United States Customs and Border Patrol (hereinafter "DHS") that has an approximate value of $6,347,989.50 (hereinafter "Defendant Funds").

## JURISDICTION AND VENUE

2.     This Court has subject matter and *in rem* jurisdiction over the matter under 28 U.S.C. §§ 1345 (action commenced by the United States of America) and 1355(a) and (b) (action for forfeiture).

3.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and (2), and 1395(a), (b), and (c).

4.     Upon filing of this complaint, the United States requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the United States will execute upon the Defendant Funds pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c)(i).

## THE DEFENDANT IN REM

5.     The Defendant Funds consist of:

        a.   $2,354,178.98 transferred from Bank of Valletta Account Number 40018307713, in the name of Woodtree Equipment Limited;

    b.   $1,958,492.41 transferred from Bank of Valletta Account Number 40018307739, in the name of Woodtree Equipment Limited;

    c.   $71,590.48 transferred from Bank of Valletta Account Number 40020189783, in the name of Woodtree Equipment Limited; and

    d.   $1,963,727.63 transferred from Epiq Class Action & Claims Solutions, Inc., the 5DIMES claims administrator.

6.      The Defendant Funds are currently in the custody of DHS and will remain within the jurisdiction of this Court during the pendency of this action.

## BASIS FOR FORFEITURE

7.      The Defendant Funds are subject to forfeiture, pursuant to 18 U.S.C § 981(a)(1)(C), because the funds constitute or are derived from proceeds traceable to illegal transmission of gambling information, in violation of 18 U.S.C. § 1084, operation of an illegal gambling business, in violation of 18 U.S.C. § 1955, and wire fraud, in violation of 18 U.S.C. § 1343, which are "specified unlawful activity" within the meaning of 18 U.S.C. §§ 1956(c)(7) and 1961(1), and conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371.

8.      Further, the Defendant Funds are subject to forfeiture, pursuant to 18 U.S.C § 981(a)(1)(A), because the funds constitute property involved in money laundering, in violation of 18 U.S.C. § 1956, and property traceable to such property.

## FACTS

9.      William Sean Creighton ("Creighton") was a U.S. citizen who moved to Costa Rica and eventually obtained Costa Rican citizenship.

10.     Creighton married Laura Varela ("Varela"), a citizen of Costa Rica, in April 2011.

11.     Creighton moved to Costa Rica to start a sportsbook.

12.     By 2011, Creighton was operating 5DIMES.

13.     5DIMES was an online sports gambling enterprise that was physically located in Costa Rica.

14.     On or about September 24, 2018, Creighton was kidnapped in Costa Rica and was subsequently murdered. Over a year later, Creighton's remains were discovered and positively identified in Costa Rica, and Creighton's death was ruled a homicide by Costa Rican authorities.

15.     From the inception of 5DIMES until the date of Creighton's disappearance, Creighton exercised full and exclusive control over 5DIMES and its operations.

16.     Following Creighton's death, Varela technically assumed ultimate responsibility for 5DIMES's assets, but she did not exercise day-to-day authority over the operations of 5DIMES.

17.     5DIMES primarily operated through a website, www.5DIMES.eu, and catered to the U.S. sports gambling market. The vast majority of 5DIMES's customers were U.S. residents. Some of 5DIMES's U.S. customers resided in the Eastern District of Pennsylvania.

18.     From in or about 2011, to in or about September 2020, 5DIMES functioned to accept wagers from, and make payouts to, U.S. bettors who were betting on casino gaming and sporting events, in violation of U.S. law.

19.     From in or about 2011, to in or about September 2020, 5DIMES transferred significant profits earned from its illegal gambling activities in such a manner as to attempt to hide the nature, location, source, and control of the funds.

20.     Since it was unlawful for 5DIMES to receive electronic payments from U.S. customers to fund the customers' 5DIMES betting accounts, 5DIMES used third-party payment

processors ("TPPPs") to accept these payments. These TPPPs processed credit card transactions for 5DIMES and charged 5DIMES's U.S. customers' credit cards on behalf of 5DIMES. The TPPPs' processing of the U.S. customers' credit cards concealed the true nature of the charges from the credit card companies that would otherwise not have processed the payments had 5DIMES attempted to directly process the charges itself.

21.     Once the TPPPs received the betting funds from the U.S. customers' credit cards, the funds were transferred to bank accounts in the names of shell companies that Creighton operated.

22.     Creighton used the shell companies to hide his control of 5DIMES, to assist the 5DIMES operation, and to facilitate the laundering of proceeds generated by 5DIMES.

23.     For example, Creighton directed an associate to open several bank accounts in Malta in the name of Woodtree Equipment Limited. The bank accounts opened included the following:

      (a) Bank of Valletta Account Number 40018307713, in the name of Woodtree Equipment Limited, located in Malta;

      (b) Bank of Valletta Account Number 40018307739, in the name of Woodtree Equipment Limited, located in Malta; and

      (c) Bank of Valletta Account Number 40020189783, in the name of Woodtree Equipment Limited, located in Malta.

24.     These bank accounts received funds that were proceeds of the 5DIMES bets placed by U.S. customers and processed by the TPPPs. Some of the funds deposited into these bank accounts were transferred to financial accounts in Costa Rica and were used to pay both operational expenses for 5DIMES and personal expenses of Creighton.

25.     5DIMES had bettors accounts for its U.S. customers.

26.     5DIMES held in its bettors accounts funds that 5DIMES owed to its U.S. customers on bets that the U.S. customers had placed with 5DIMES.

27.     On or about October 1, 2020, 5DIMES transferred the funds that it was holding in its U.S. customers' 5DIMES bettors accounts to Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a claims administrator, for Epiq to hold and distribute to the U.S. customers.

28.     Epiq held the 5DIMES bettors account funds in Huntington National Bank, Disbursement Account No. xxx5762, in the name of 5DIMES Distribution Project, and distributed the funds to 5DIMES's U.S. customers.

29.     On or about September 30, 2021, approximately $1,963,727.63 remained in Huntington National Bank, Disbursement Account No. xxx5762, unclaimed by 5DIMES's U.S. customers.  Epiq treated the approximately $1,963,727.63 remaining in Huntington National Bank, Disbursement Account No. xxx5762, in the name of 5DIMES Distribution Project, as abandoned and owned by 5DIMES.

30.     Epiq transferred the approximately $1,963,727.63 remaining in Huntington National Bank, Disbursement Account No. xxx5762, to Huntington National Bank, Account No. xxx4406, in the name of 5DIMES Distribution Project.

31.     From in or about 2011, to in or about September 2020, Creighton and others, in their operation of 5DIMES, engaged in illegal transmission of gambling information, in violation of 18 U.S.C. § 1084, operation of an illegal gambling business, in violation of 18 U.S.C. § 1955, wire fraud, in violation of 18 U.S.C. § 1343, conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and money laundering, in violation of 18 U.S.C. § 1956.

32.    On or about the following dates, the following Defendant Funds were transferred to DHS:

(a) $2,354,178.98 transferred from Bank of Valletta Account Number 40018307713, in the name of Woodtree Equipment Limited, located in Malta, on or about October 8, 2019;

(b) $1,958,492.41 transferred from Bank of Valletta Account Number 40018307739, in the name of Woodtree Equipment Limited, located in Malta, on or about October 8, 2019;

(c) $71,590.48 transferred from Bank of Valletta Account Number 40020189783, in the name of Woodtree Equipment Limited, via Bank of Valletta Account Number xxx7764, in the name of Woodtree Equipment Limited, located in Malta, on or about October 15, 2020; and

(d) $1,963,727.63 transferred from Epiq's Huntington National Bank, Account No. xxx4406, in the name of 5DIMES Distribution Project, on or about December 29, 2021.

## CLAIM FOR FOFEITURE

33.    By reasons of the foregoing, there is reason to believe that the Defendant Funds constitute or are derived from proceeds traceable to illegal transmission of gambling information, in violation of 18 U.S.C. § 1084, operation of an illegal gambling business, in violation of 18 U.S.C. § 1955, and wire fraud, in violation of 18 U.S.C. § 1343, which are "specified unlawful activity" within the meaning of 18 U.S.C. §§ 1956(c)(7) and 1961(1), and conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and are therefore subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C).

34.     Further, there is reason to believe that the Defendant Funds constitute property involved in money laundering, in violation of 18 U.S.C. § 1956, and property traceable to such property, and are therefore subject to forfeiture to the United States, pursuant to 18 U.S.C § 981(a)(1)(A).

WHEREFORE, the plaintiff, United States of America, requests:

1.     The Defendant Funds be proceeded against according to the law and rules of this Court, and that due notice be given to all the interested parties to appear and show cause as to why forfeiture should not be decreed.

2.     The Court, for the reasons set forth herein, adjudges and decrees that the Defendant Funds be forfeited to the United States of America and disposed of in accordance with existing laws, together with costs, and for such relief as this Court deems proper and just.

Respectfully submitted,

JAQUELINE C. ROMERO
United States Attorney

SARAH L. GRIEB
Assistant United States Attorney
Chief, Asset Recovery and Financial Litigation Unit

Date:   September 29, 2022

8

## **V E R I F I C A T I O N**

I, Charles Dalin, being of legal age, verify and, pursuant to 28 U.S.C. § 1746(2), declare and state as follows:

1.      I am a Special Agent with the Homeland Security Investigations, Department of Homeland Security, and I am assigned to the investigation of this case.

2.      I have reviewed the foregoing Complaint for Forfeiture *in rem* and know the contents thereof, and that the matters contained in the Complaint are true to my knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

3.      The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent.

I hereby verify and declare under penalty of perjury that the forgoing is true and correct.

Executed on September 29, 2022.

Charles Dalin
Special Agent
Homeland Security Investigations